Tara Church (SBN 235385)
TChurch@tarachurchlaw.com
Law Offices of Tara Church, Esq.
13755 Bayliss Road, Second Floor
Los Angeles, California 90049
Telephone: (310) 529-1677

*Attorney for Defendants*
*Brook Church-Koegel, David H. Goldman,*
*and Nicole J. Walker*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>BROOK CHURCH-KOEGEL, DAVID H. GOLDMAN, and NICOLE J. WALKER,<br><br>Defendants. | Case No.  2:20-CV-08480 FMO(JCx)<br><br>**NOTICE OF MOTION AND JOINT MOTION OF DEFENDANTS TO DISMISS;  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  December 3, 2020<br>Time: 10:00 A.M.<br>Place: Room 6D, 6th Floor<br><br>Judge: Hon. Fernando M. Olguin |

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 3, 2020 at 10:00 a.m. or as soon thereafter as the matter may be heard, before the Honorable Fernando M. Olguin in Courtroom 6D at the United States Courthouse located at 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, Defendants herein, BROOK CHURCH-KOEGEL, DAVID H. GOLDMAN, AND NICOLE J. WALKER (collectively "Defendants") will and hereby do jointly move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of

1  Civil Procedure, to dismiss Plaintiff SECURITIES AND EXCHANGE
2  COMMISSION'S (the "SEC") prayers for disgorgement and permanent injunctive
3  relief for failure to state a plausible claim upon which relief can be granted.
4       This Motion is based upon this Notice of Motion and Motion, all other
5  pleadings and papers on file herein, the attached Memorandum of Points and
6  Authorities in Support of Joint Motion to Dismiss, and such other argument and
7  evidence as may be presented to the Court.
8       **This motion is made following the conference of counsel pursuant to**
9  **Local Rule 7-3, which took place on October 23, 2020,** between the undersigned
10 counsel for defendants, and Christine Nestor and Stephanie Moot, counsel for SEC.

Date:  October 29, 2020        Respectfully Submitted,

LAW OFFICES OF TARA CHURCH

By:  /s/ Tara Church
     Tara Church

*Attorneys for Defendant,*
*Brook Church-Koegel*

# **TABLE OF CONTENTS**

**Page**

I. Introduction ...................................................................................................... 1

II. Legal Standard .................................................................................................. 2

III. Allegations In The Complaint ........................................................................... 2

IV. Argument .......................................................................................................... 4

    A. SEC's Request For A Permanent Injunction Must Be Dismissed Because It Fails To Allege Reasonable Likelihood of Future Violation. ................................................................................................. 4

    B. After *Liu*, Disgorgement Is Not An Available Remedy Against These Defendants in This Case. ............................................................ 6

        1. Defendants Did Not Receive "Profits" From Conduct Alleged in the Complaint. ................................................................ 7

        2. Defendants Are Not "Wrongdoers" Within The Meaning Of *Liu v. SEC*. ................................................................................... 9

        3. The SEC Has Not Alleged That A Disgorgement Award Against These Individuals Would Be Appropriate and Necessary For the Benefit of Victims. ............................................ 10

V. Conclusion ...................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Aaron v. SEC*, 446 U.S. 680 (1980) ............................................................................ 5

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 FRD 487 (C.D. Cal. 2014).......................................................................................................... 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 2

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990).............................. 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 2

*F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084 (9th Cir. 1985) ....................................... 4

*Gabelli v. S.E.C*, 133 S. Ct. 1216 (2013) ................................................................... 6

*Hecht Co. v. Bowles*, 64 S.Ct. 587 (1944) ................................................................. 4

*Liu v. SEC*, 140 S.Ct. 1936 (2020)...................................................................... passim

*S.E.C. v. Gabelli*, 653 F.3d 49 (2d Cir. 2011)............................................................. 6

*Saad v. S.E.C.*, 718 F.3d 904 (D.C. Cir. 2013) .......................................................... 5

*SEC v. Gentile*, 939 F.3d 549 (3d Cir. 2019) ............................................................. 5

*SEC v. Janus Spectrum LLC*, 811 F. App'x 432 (9th Cir. July 1, 2020).................... 6

*SEC v. Koracorp Indus., Inc.*, 575 F.2d 692 (9th Cir.1978) ...................................... 4

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) ........................................................... 4

*SEC v. Pros Int'l, Inc.*, 994 F.2d 767 (S.D.N.Y.1993)............................................... 4

*SEC v. Sands*, 902 F.Supp. 1149 (C.D. Cal. 1995) ................................................... 2

*SEC v. Yang*, No. 19-55289, 2020 WL 4530630 (9th Cir. Aug. 6, 2020) .... 7, 8, 9, 10

*Trustcash Holdings, Inc. v. Moss*, 668 F.Supp.2d 650 (D.N.J. 2009) ....................... 6

*United States v. EME Homer City Generation, L.P.*, 727 F.3d 274 (3d Cir. 2013) ... 6

*W.T. Grant Co.*, 345 U.S. 629 (1953) ........................................................................ 4

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F3d 970 (9th Cir. 2010) ......................... 2

**Page**

**Statutes**

15 U.S.C. § 77 ................................................................................................ 2, 4

15 U.S.C. § 78 ............................................................................................ 2, 4, 10

TABLE OF AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

## I. Introduction

The Complaint in this case fails to allege facts sufficient to justify permanent injunctive relief against these defendants – as there is no allegation that any of them are presently, or are about to, sell unregistered securities without a license. Moreover, the Complaint does not allege facts which would justify an award of disgorgement against these defendants in light of the Supreme Court's recent decision in *Liu v. SEC*, 140 S.Ct. 1936 (2020)*,* which limited that remedy to the "net profits" that can be returned by "wrongdoers" to victims of securities fraud schemes; this Complaint does not allege fraud, intentional torts or any receipt of "profits" by these defendants. Nor does it allege that disgorgement is appropriate and necessary for the benefit of victims.

In fact, Defendants are charged only with violations that require no scienter and did not cause the harm to Woodbridge Group of Companies, LLC ("Woodbridge") investors – that harm was caused by Woodbridge management which absconded with investor funds in a Ponzi scheme of which these defendants are not even alleged to have had knowledge. There is no case, in any district court or any federal court of appeal after the *Liu* limitations, of which counsel is aware after a diligent search, in which ordinary salary or wages, or commissions on sales, equates to *net profits.* Indeed, the SEC cited no such authority in the LR 7-3 pre-filing conference of counsel relating to this Motion.

The fact that Robert H. Shapiro, Woodbridge's founder, was running the company as a Ponzi scheme (Complaint ¶ 1), which resulted in a 25-year prison sentence, forms a colorful background of this case, but it is irrelevant to the relief that can be imposed under the law against these defendants, for all the reasons set forth below.

## II. Legal Standard

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) when the complaint fails to set forth a "cognizable legal theory," or when it lacks "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To withstand dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. A Rule 12(b)(6) motion to dismiss is also the proper vehicle to dismiss a prayer for relief that is precluded as a matter of law. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F3d 970, 973-974 (9th Cir. 2010) (holding that a request to strike prayers for relief because they are "precluded as a matter of law" is "better suited to a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion"). In ruling on a Rule 12 motion, the court may consider matters that it judicially notices. *SEC v. Sands*, 902 F.Supp. 1149, 1165 (C.D. Cal. 1995); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 FRD 487, 489-490 and n. 1 (C.D. Cal. 2014) (determining court may judicially notice pleadings in related litigation in ruling on motion to strike).

## III. Allegations In The Complaint

The SEC alleges that Defendants violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and 77e(c)] and Section 15(a)(l) of the Exchange Act [15 U.S.C. § 78o(a)(1)] by selling, as allegedly unlicensed brokers, securities that allegedly should have been registered with the SEC. (*See, e.g.*, Complaint ¶¶ 4,

2

1  44-47.) Defendants conducted these sales while they were salaried sales agents of
2  Woodbridge. (Complaint ¶¶ 2, 4.) The absence of any fraud or scienter-related
3  allegations in the Complaint makes clear that these Defendants did not create
4  Woodbridge's investment products. They did not design Woodbridge's marketing
5  strategy or materials. They did not perpetrate Shapiro's Ponzi scheme. They did
6  not know how Shapiro was handling Woodbridge's finances. They bear no
7  responsibility for Woodbridge's decisions regarding allocations of revenue or
8  distribution of proceeds. They had no role in assessing whether Woodbridge's
9  alleged securities were, in fact, securities, whether they needed to be registered, or
10 whether they could be legally sold by unlicensed internal salespeople. Within the
11 scope of their employment, these defendants did not have any choice with respect to
12 whether they marketed one of Woodbridge's products versus another. They did
13 their jobs as they were told. Defendants did not misrepresent the nature or safety of
14 the products they marketed; they conducted sales based on the guidance they
15 received from Woodbridge's management, accountants and lawyers, including
16 opinions from outside counsel, regarding the legal propriety of the investment
17 products. The Defendants have not worked for Woodbridge for nearly three years.
18 They are not currently, nor is there a reasonable likelihood that they will in the
19 future, act as unlicensed brokers to sell unregistered securities. Each of these facts
20 can be inferred from the allegations or absence of allegations in the Complaint.

21      Defendants are not accused of fraud, or even of violating securities laws with
22 scienter; accordingly, the Complaint's allegations lack the specificity that the
23 heightened pleading standard imposes for fraud claims. Yet the SEC asks this Court
24 to impose upon these Defendants the exact same extreme remedies—permanent
25 injunctions, disgorgement and civil penalties—that it seeks against, for example,
26 brokers who abscond with client funds, executives who intentionally misrepresent
27 the health of a company to raise money, and insiders who willfully falsify
28 paperwork in order to hide illegal activity. The remedies the SEC requests in its

Complaint against these Defendants are nothing short of extreme and baseless as a matter of law. The SEC's prayer for permanent injunctions and disgorgement must be dismissed.

## IV. Argument

### A. SEC's Request For A Permanent Injunction Must Be Dismissed Because It Fails To Allege Reasonable Likelihood of Future Violation.

To obtain an injunction, the SEC must establish that there is "a reasonable likelihood of future violations of the securities laws." *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980) (citing Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(1)). Whether a likelihood of future violations exists depends upon the totality of the circumstances, including factors such as "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood . . . that future violations might occur; and the sincerity of [a defendant's] assurances against future violations." *Murphy*, 626 F.2d at 655. "Although no single factor is determinative, [] **the degree of scienter 'bears heavily'** on the decision." *SEC v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (S.D.N.Y.1993) (emphasis added) (affirming district court's denial of a permanent injunction [] even though defendant's "actions were clearly negligent and probably reckless[.]").

"Injunctive relief is used to deter future violations of securities laws, not to punish past violations. *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 697 (9th Cir.1978) (*citing Hecht Co. v. Bowles*, 64 S.Ct. 587 (1944)). Thus, injunctions against securities law violations are proper only if the wrongs are ongoing or likely to recur. *F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985). In other words, the SEC must show "some cognizable danger of recurrent violation,

something more than the mere possibility which serves to keep the case alive." *W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

"[I]t will almost always be necessary for the [SEC] to demonstrate that the defendant's past sins have been the result of more than negligence. . . . An injunction is a ***drastic remedy***, not a mild prophylactic, and ***should not be obtained against one acting in good faith***." *Aaron v. SEC*, 446 U.S. 680, 703 (1980) (C.J. Burger, concurrence) (emphasis added). "That an injunction is permissible only where necessary to prevent misconduct from occurring in the future, and not merely to punish past transgressions, is a standard to which the SEC must also hold itself. When it does not, the buck stops here: Lest we return to those days when only a modest showing was considered sufficient, federal courts may not grant SEC injunctions except upon a proper showing of the likelihood of future harm." *Gentile*, 939 F.3d at 561 (internal citations and quotations omitted).

Here, the SEC seeks permanent injunctions against Defendants which would have the effect of barring them from ever working in the securities and investment industry again and permanently staining their reputations.[1] The SEC requests this "drastic remedy"[2] in the Complaint without making a single allegation that defendants' conduct was not in good faith or that the same conduct is likely to occur again. Not a single fact alleged in the Complaint could even theoretically support imposition of an injunction against these defendants. In the first instance, the Complaint fails to allege that any defendant sold Woodbridge financial instruments

---

[1] Indeed, the SEC's practice of actively promoting its enforcement decisions through press releases, even when its allegations have not been proved or tested by a court, has already, in this case, resulted in severe reputational damage to these defendants. A Google search of Defendant Church-Koegel's name, for example, yields at least 5 pages of results with the words "Ponzi scheme," "SEC charges" and "violations of securities laws."

[2] "SEC injunctions come with serious collateral consequences . . . And when a court bans a defendant from his industry, it imposes what in the administrative context has been called the "securities industry equivalent of capital punishment." *SEC v. Gentile*, 939 F.3d 549, 566 (3d Cir. 2019), *quoting Saad v. S.E.C.*, 718 F.3d 904, 906 (D.C. Cir. 2013) (internal citations omitted).

(which the Complaint does allege were unregistered securities) since Woodbridge dissolved in bankruptcy three years ago. Moreover, the lack of knowledge and intent inherent in the allegations against Defendants are logically inconsistent with a reasonable likelihood that any defendant will continue selling such products without proper registrations and licenses in the future. The absence of such allegations is fatal to the SEC's prayer for injunctive relief.

Dismissal now is not premature where the SEC has failed to allege any facts that the Court could consider in deciding whether to issue the requested injunction. Courts have dismissed claims for injunctive relief at the motion to dismiss stage. *See, e.g., Trustcash Holdings, Inc. v. Moss*, 668 F.Supp.2d 650, 660 (D.N.J. 2009) (dismissing injunctive relief request when alleged violation happened 18 months before complaint); *see also United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 295 (3d Cir. 2013) (affirming dismissal of claims for improper injunctive relief because it would not be "appropriate" for a district court to award relief that is impossible to fulfill.).[3]

### B. After *Liu*, Disgorgement Is Not An Available Remedy Against These Defendants in This Case.

In June 2020, after the Complaint was filed in this Matter, the United States Supreme Court decided that disgorgement is an available remedy to the SEC in limited circumstances which are not present here. *Liu v. SEC*, 140 S.Ct. 1936 (2020). Specifically, "a disgorgement award that does not exceed a **wrongdoer's net profits** and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Id.* at 1940 (emphasis added); *see also SEC v. Janus Spectrum LLC*, 811 F. App'x 432, 433 (9th Cir. July 1, 2020). "Courts may not

---

[3] While it is certainly unusual to dismiss a prayer for injunctive relief at the pleading stage, in nearly all cases the SEC brings, the "complaint plausibly alleges that defendants *intentionally* violated the federal securities laws." *S.E.C. v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011), rev'd on other grounds, *Gabelli v. S.E.C*, 133 S. Ct. 1216 (2013). Here, there is no plausible allegation that Defendants even knew they were at risk of violating the securities laws, much less did so intentionally.

enter disgorgement awards that exceed the ***gains made upon any business or investment***, when both the receipts and payments are taken into the account . . . courts must deduct legitimate expenses before ordering disgorgement under § 78u(d)(5)." *Liu*, 140 S. Ct. at 1949-50 (quotations and citations omitted)(emphasis added).

          1.    <u>Defendants Did Not Receive "Profits" From Conduct Alleged in the Complaint.</u>

The Complaint does not allege that Defendants received any profits, whatsoever. There is no allegation that they received any of the "gains made" on Woodbridge's receipt of investor funds. *Liu*, 140 S. Ct. at 1949-50. Defendants were salaried employees of Woodbridge for the entire time period relevant to this Matter and there is no allegation that they ever received any funds from Woodbridge other than their compensation for work performed.[4]

The SEC will argue that Defendants' receipt of "commissions in addition to salary" (Complaint ¶ 4) represents their "ill-gotten gains." This allegation is insufficient as a matter of law. Defendants are not charged with the fraud that occurred at Woodbridge; they are not even alleged to have known about it, much less participated in profits. After *Liu*, a threadbare, conclusory assertion that payments to an employee are "ill-gotten" simply because they were paid by an entity engaged in a fraudulent scheme (Woodbridge) is insufficient. The Ninth Circuit recently reversed a disgorgement award and remanded the case of *SEC v. Yang*, No. 19-55289, 2020 WL 4530630 (9th Cir. Aug. 6, 2020) (unpublished memorandum) to this district court to determine whether the court limited its disgorgement awards to the specific conduct of the two individual defendants where

---

[4] The Complaint alleges that Defendants were paid, in part, through "alter ego" companies—in fact, limited liability companies. This is a red herring. Defendants were at all times salaried employees of Woodbridge. They did not receive any 1099 income after December 31, 2015, when the IRS penalized Woodbridge for fraudulently attempting to treat its regular employees as independent contractors as part of a tax avoidance scheme by the company.

7

it imposed joint and several liability among them and the entity defendants. It is clear that disgorgement may apply only to "net profits" retained by a wrongdoer as a result of *that particular party's* misconduct. *Id.; Liu*, 140 S.Ct. at 1940.

The misconduct alleged against these Defendants is that they sold certain unregistered investment products which the SEC later determined should have been registered as securities, and that in order to do so they should have been licensed by the SEC. (Complaint, ¶¶ 41-47.) The SEC does not allege any specific facts about how Defendants' alleged misconduct—selling Woodbridge's unregistered investment products without a license—injured any specific victim, in what amount, and how they "profited" from each of those injuries. To wit, there is no allegation that Defendants ever received any funds from Woodbridge other than compensation for their work as employees. While the SEC alleges in conclusory fashion that the commissions were "transaction-related," it offers no facts to support that conclusion. Which transactions? Were they transactions where investors lost money or where investors realized a gain? How much was each commission? How much of each commission that Defendants earned by virtue of a sale was actually paid to them? Were these so-called "commissions" actually part of their guaranteed salary?[5]

Ironically, insofar as Defendants were salaried employees who performed regular business functions, Woodbridge's payments *to them* would properly be considered "legitimate expenses" to be deducted from gross profits for purposes of calculating Woodbridge's net profits under *Liu*. 140 S.Ct. at 1949-50 ("courts must deduct legitimate expenses before ordering disgorgement under § 78u(d)(5).")

The SEC has failed to adequately allege that Defendants' commission compensation was, in fact, "profits" of Shapiro's fraudulent scheme.

---

[5] The SEC is aware that the evidence shows Woodbridge placed a "cap" at the beginning of each year on the amount of salary plus commissions Woodbridge sales employees could earn. Defendants routinely did not receive any commission on a particular sale. It is misleading to allege that Defendants pocketed "transaction-based commissions" when, in reality, they were paid a base salary plus a preset "commission" in the exact same amount each pay period, regardless of their sales.

2. Defendants Are Not "Wrongdoers" Within The Meaning Of *Liu v. SEC.*

The defendants in *Liu* were accused of fraud, like the defendants in the vast majority, if not all, of the cases where a federal court has ordered disgorgement of net profits post-*Liu*. Defendants here are not charged with fraud or any scienter-based tort offense. It is thus doubtful that they should be considered "wrongdoers" for purposes of *Liu*'s narrow prescription that disgorgement is limited to a **wrongdoer's net profits** to be awarded to victims of the injury created by that wrongdoer. Black's Law Dictionary 1446, 1335 (5th Ed.1979) defines a wrongdoer as "[o]ne who commits an injury; a tortfeasor." Defendants are not alleged to have committed a tort; nor did their conduct, as alleged, result in the injuries described in the Complaint—those injuries arose from Shapiro's operating Woodbridge as a Ponzi scheme.

No court has addressed the question of whether a defendant accused of violating strict liability securities regulations is a "wrongdoer" within the meaning of *Liu*. However, it is clear that the conduct alleged against Defendants is far different from that of a defendant accused of masterminding and profiting from a fraudulent scheme. They are accused of selling alleged securities as employees of the issuer (Woodbridge), which they were assured by Woodbridge's management and lawyers were exempt from registration, and which they believed they could lawfully do without a securities license. In exchange for their work, Defendants received fair compensation. The SEC is attempting to stretch the law beyond its logical reach to achieve maximum penalties against these Defendants for what appear to be purely punitive ends—such a strategy is no longer permissible, if it ever was. *See Yang*, ("Because this power arises under equity, disgorgement orders must be crafted so that their effect is restitutionary only, not punitive, reaching beyond the consequences of the specific wrongdoer's actions. 2020 WL 4530630 (*citing Liu*, 140 S.Ct. at 1943, 1947–50).

       3.    <u>The SEC Has Not Alleged That A Disgorgement Award Against These Individuals Would Be Appropriate and Necessary For the Benefit of Victims.</u>

Not only has the SEC failed to identify any victims of Defendants' alleged misconduct, but it also fails to allege in the Complaint, as it must, that a disgorgement award against Defendants would be appropriate and necessary for the benefit of those victims. *See Yang*, 2020 WL 4530630 (ordering remand to district court to reconsider disgorgement award because "it is unclear that the disgorgement amounts ordered are 'appropriate and necessary for the benefit of investors.'" (citing 15 U.S.C. § 78u(d)(5); *Liu*, 140 S. Ct. at 1948–49.))

## V.   Conclusion

For all of the foregoing reasons, Defendants' motion should be granted.

Date: October 29, 2020                Respectfully Submitted,

                                                LAW OFFICES OF TARA CHURCH

                                                By: /s/ Tara Church
                                                     Tara Church

                                                *Attorneys for Defendant,*
                                                *Brook Church-Koegel*

# CERTIFICATE OF SERVICE

Case Name:   SEC v. Church-Koegel, et al          No: 2:20-cv-08480 FMO(JCx)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 13755 Bayliss Rd, 2nd Fl., Los Angeles, California 90049.

I hereby certify that on October 29, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system: **NOTICE OF MOTION AND JOINT MOTION OF DEFENDANTS TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on October 29, 2020, at Los Angeles, California.

    Tara Church                                /s/
Declarant                                   Signature